IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**HOBERT W. COOK,**
**Claimant Below, Petitioner**

FILED
**January 10, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)**   **No. 22-ICA-75**      (JCN: 2021014392)

**ARCELORMITTAL USA,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Hobert Cook appeals the August 5, 2022, order of the West Virginia Workers' Compensation Board of Review ("Board"). Respondent Arcelormittal USA ("Arcelormittal") filed a timely response.[1] Petitioner did not file a reply brief. The issue on appeal is whether the Board erred in affirming the claim administrator's denial of Mr. Cook's claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' briefs, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the lower tribunal's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Cook allegedly suffered an injury to his cervical spine on October 6, 2020, while setting timbers, or "pillaring," at work as a coal miner. Mr. Cook claimed he had immediate pain in his neck and upper back, between his shoulders, which continued to increase. He reported the injury to his supervisor and continued to work until October 20, 2020, when he claims his doctor "took him out." By that time, Mr. Cook alleged the pain had spread over the back of his head and down his arms. At the time of the incident, Mr. Cook was being treated by Robert Kropac, M.D., for a previous compensable injury of July 2017, and he continued to be treated by Dr. Kropac after October 2020. Dr. Kropac noted on December 15, 2020, more than two months after the precipitating incident, that Mr. Cook suffered this new injury with increased neck pain and right upper extremity radiation of pain to a degree he had not suffered since he returned to work after the 2017 injury. Dr. Kropac diagnosed "cervicodorsal musculoligamentous strain, rule out cervical disc

---

[1] Petitioner is represented by Gregory S. Prudich, Esq. Respondent is represented by Jane Ann Pancake, Esq. and Jeffrey B. Brannon, Esq.

herniation with right upper extremity radiculitis[,]" concluded that Mr. Cook was temporarily totally disabled, and opined that he needed an MRI.

As for the prior compensable injury, medical records indicate that Mr. Cook sustained an occupational injury that caused pain in his neck and right upper extremity in July 2017. At that time, Mr. Cook reported that he had constant neck pain exacerbated by using his upper extremities, especially elevated use of his right arm, and complained of numbness and pain radiating into his right arm with use of his right arm. Dr. Kropac diagnosed cervicodorsal musculoligamentous strain. A February 2018 MRI found severe bilateral neural foraminal stenosis in his cervical spine, and he was diagnosed with degenerative disc disease and facet arthrosis which was causing upper extremity radicular symptoms. Mr. Cook continued to report constant neck pain which increased with overhead use of his arms. The diagnosis of cervicodorsal musculoligamentous strain remained consistent as he continued to follow with Dr. Kropac throughout 2018, 2019, and 2020. On June 11, 2020, several months prior to the October 6, 2020, incident, Mr. Cook reported to Dr. Kropac that his neck pain had been increasing over the past six months. Mr. Cook also had a preexisting lower back condition prior to the July 2017 injury that Dr. Kropac treated.

Mr. Cook saw Dr. Kropac on October 21, 2020, for the first time after the October 6, 2020, incident. He did not mention the October 6, 2020, incident, nor did he mention any symptoms involving his neck or his right upper extremity. Mr. Cook's complaints involved his lower back only, and Dr. Kropac noted during that visit that "due to increased lower back pain he is unable to do his usual and customary job. He is to remain off work for the next three months." Mr. Cook returned to Dr. Kropac on November 18, 2020, and December 8, 2020, for low back pain and neither of those records mention his cervical spine, head, or right upper extremity issues.

Mr. Cook did not discuss the alleged October 6, 2020, injury with Dr. Kropac until December 15, 2020, well after he had already stopped working due to low back pain. Dr. Kropac's December 15 note states that Mr. Cook was able to continue to work in a full duty capacity up until approximately October 20, 2020, and, contrary to the October 21, 2020, clinical note, that Mr. Cook was seen in the office at that time with "increasing neck pain and increasing right upper extremity radiation of pain of a degree that he has not [been] able to return to work since 10.20.2020 to the present time."

Dr. Kropac completed a return-to-work slip for Mr. Cook dated April 6, 2021, which indicated that Mr. Cook was temporarily totally disabled from April 6, 2021, through June 29, 2021.

By order dated April 14, 2021, the claim administrator denied Mr. Cook's claim based on a finding that he did not sustain an injury in the course of and resulting from his employment. Mr. Cook protested the decision. At his May 25, 2021, deposition, Mr. Cook testified that he developed pain in his neck, down his arms, over the top of his head, and

down into his eyes after carrying an eight-foot piece of timber at work on October 6, 2020. He stated that a few weeks after the injury he sought treatment with Dr. Kropac who took him off work. Mr. Cook testified that this injury was different than the 2017 injury because he had pain in his head and right arm afterwards, and he denied pain in those areas after the 2017 injury.

By order dated August 5, 2022, the Board affirmed the claim administrator's order denying the claim, finding that Mr. Cook failed to prove by a preponderance of the evidence that he sustained a new injury in the course of and resulting from his employment on October 6, 2020. In support of its conclusion, the Board noted that the medical evidence established that Mr. Cook was receiving treatment for the same subjective complaints for two years preceding the alleged injury, had no new clinical findings after the alleged injury, did not mention the alleged injury to Dr. Kropac until more than two months after it allegedly occurred, and was not taken off work or unable to work as a result of the alleged injury. It is from the Board's order that Mr. Cook now appeals.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-12a(b) (2022), as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

On appeal, Mr. Cook argues that although he had a previous injury to his cervical spine in 2017, that does not preclude a finding of a compensable injury to his cervical spine at a later date. He argues that his October 6, 2020, injury involved a new, distinct diagnosis because it added "rule out cervical disc herniation with right upper extremity radiculitis" to the previous diagnosis of "cervicodorsal musculoligamentous strain." Mr. Cook also asserts that he would not have been able to maintain his employment lifting heavy cables

and lifting and setting hundred-pound timbers for ten to eleven hours per day between the 2017 injury and the 2020 injury if he had been continuously injured. Rather, he argues that he suffered a discrete injury in the course of and as a result of his employment on October 6, 2020, which is established based upon his presentation after the injury. He claims he reported the injury to his co-workers and supervisors, he sought medical treatment, and a new diagnosis was made. Mr. Cook argues that he met his burden of proof for establishing compensability and is entitled to such a ruling.

Respondent Arcelormittal argues that Mr. Cook's own medical records do not support his allegations regarding a new and discrete injury being sustained on October 6, 2020. Mr. Cook was treated by Dr. Kropac for the same symptoms (neck pain and radiating shoulder pain) and the same diagnosis (cervicodorsal musculoligamentous strain) during 2018, 2019, and 2020. Mr. Cook reported that those symptoms were getting worse before the injury in October 2020. Arcelormittal argues that Dr. Kropac's interest in ordering an MRI and ruling out a cervical disc herniation does not transform the continued diagnosis of cervicodorsal musculoligamentous strain into a discrete, new diagnosis. Furthermore, Dr. Kropac actually wrote Mr. Cook off work due to his lower back pain, not the October 6, 2020, injury, and then later wrote a contradictory note in his medical record summarizing the events of October 2020.

Arcelormittal further asserts that pursuant to *Gill v. City of Charleston*, Mr. Cook's exacerbation of his preexisting cervical spine condition is not compensable. *See* Syl. Pt. 3, *Gill v. City of Charleston,* 236 W. Va. 737, 783 S.E.2d 857 (2016) (aggravation of a noncompensable preexisting injury must result in a discrete new injury to be found compensable). Arcelormittal also argues that Mr. Cook's injury is likewise not compensable under *Moore v. ICG Tygart Valley, LLC*, because his preexisting condition was symptomatic before October 6, 2020. *See* Syl. Pt. 5, *Moore v. ICG Tygart Valley, LLC*, ___ W. Va. ___, 879 S.E.2d 779 (2022) (claimant's disability will be presumed to have resulted from the compensable injury if before the injury, the claimant's preexisting condition was asymptomatic, and after the injury, the symptoms of the disabling injury appeared and were continuously apparent thereafter).

Upon review, we find no error in the Board's finding of insufficient evidence to support Mr. Cook's claim. Mr. Cook was treated for the same symptoms and same diagnosis for years prior to October 6, 2020, and was symptomatic with complaints of increasing neck pain as recently as June 11, 2020. Dr. Kropac's records indicate that Mr. Cook was ordered to stop working due to low back pain, not because of alleged injuries sustained October 6, 2020. The Board also found that the medical evidence of record indicated that all Mr. Cook's symptoms, clinical findings and/or diagnoses that might reasonably be attributed to the October 6, 2020, injury predated it by several years. Therefore, the Board found there was no evidence to support a finding that Mr. Cook sustained a new injury on October 6, 2020. The Board did not err in affirming the denial of the claim on that basis.

Accordingly, we affirm.

Affirmed.

**ISSUED:** January 10, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen